UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARL B. JELLIFF, III,

                    Petitioner,

         -vs-

J. MORRISSEY,

                  Respondent.

_____

**No. 04-CV-6526(CJS)(VEB)**
**Report and Recommendation**

## I.  Introduction

*Pro se* petitioner Carl B. Jelliff, III ("Jelliff" or "petitioner"), has filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a decision revoking his parole.

Petition ("Pet") at 7-8, ¶¶22(A)-(D) (Docket No.1).[1] This matter has been referred to the

undersigned pursuant to 28 U.S.C. § 636(b)(1). For the reasons that follow, I recommend that the

petition be dismissed and that no certificate of appealability issue.

## II.  Factual Background and Procedural History

On March 29, 2001, Jelliff pled guilty to one count of felony driving while intoxicated

("DWI") in the Steuben County Court of New York State Supreme Court. He was sentenced, on

June 29, 2001, to a term of five (5) years probation. That day, Jelliff and the trial court signed

form titled "Orders and Conditions of Adult Probation," which included language restricting

Jelliff from, among other things, possessing alcoholic beverages and entering places where

---

[1]      The factual summary that follows derives from the parties' representations contained in the
following submissions and any exhibits attached thereto: Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §
2254, dated August 20, 2007 ("Pet."); Respondents' Memorandum of Law in Opposition to Petition for a Writ of
Habeas Corpus, dated May 16, 2008 ("Resp't Mem."); Petitioner's Reply to Respondents' Opposition and
Memorandum of Law to the Petition for a Writ of Habeas Corpus, dated June 2, 2008 ("Pet'r Reply").

alcohol was sold and consumed:

> 6. Do not possess . . . alcoholic beverages.
> 7. Do not enter establishments where alcohol is sold for on-premises consumption . . . .

Resp't Mem. at 1 (quoting Respondent's Exhibit ("Resp't Ex.") B (6/29/01 Transcript ("Tr.") at 8; 1/02/03 Tr. at 32).

On October 15, 2002, the trial court signed a Declaration of Delinquency and a Violation of Probation Warrant including the following allegations:

> The probationer [Jelliff] was found to be in the R&M Grill in Corning on 10/2/02 and he admitted drinking in the same bar on numerous dates between 3/21/02 and 10/2/02. The petitioner was specifically instructed by PO Lake on 10/2/02 to remain out of establishments whose primary business was serving alcohol.

Resp't Mem. at 1. Subsequently, Jelliff was arrested, arraigned on the parole violation, and assigned defense counsel. On January 2, 2003, he declined a plea offer to one year of jail-time at the county jail. The trial court then conducted a summary hearing during which the probation officer and Jelliff testified.

Both the probation officer and petitioner stated that he (petitioner) was seated at a table at the R&M Grill, and that he had a glass of beer on the table. 1/2/03 Tr. at 6-10; 20-21. Jelliff admitted on cross-examination as follows:

> Q: And when you went to the bar on October 2, 2002, you ordered a beer, is that right?
> A: Right.
> Q: It was brought to the table where you were sitting?
> A: Yes.
> Q: It was poured for you. That was your beer, is that correct?
> A: Correct.

1/2/03 Tr. at 29-30. Jelliff explained, "I went in there, was going to order something to eat and I

ordered a beer. The beer was sitting there." *Id.* at 31.

Following the hearing, the trial court determined that Jelliff had violated the terms and condition of the probation order he had signed:

> The court finds by a preponderance of the evidence the defendant has violated the terms and conditions of his probation which required him not only to not possess alcoholic beverages but also required him to refrain from entering establishments where alcohol is sold for on premises consumption and I find that the R&M Grill was or R&M Restaurant was such an establishment.
>
> I agree with the prosecutor that the conflicting evidence concerning whether or not the defendant consumed alcoholic beverages may be resolved through evaluation of credibility. I'm just not going to get to that at this point. I feel there is sufficient testimony, too, based on the uncontradicted evidence that would justify and does justify a finding that the defendant has violated the terms and conditions of his probation.

1/2/03 Tr. at 40-41. The trial court sentenced petitioner to term of incarceration of one and one-third to four years on January 27, 2003.

Jelliff pursued a direct appeal of his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. The Appellate Division unanimously affirmed in a summary decision and order. *People v. Jelliff*, 2004 N.Y. Slip Op. 01913, 5 A.D.3d 1130, 775 N.Y.S.2d 749, 2004 WL 583762 (App. Div. 4th Dept. Mar. 19, 2004) ("It is hereby ORDERED that the judgment so appealed from be and the same hereby is unanimously affirmed."). Leave to appeal to the New York Court of Appeals was denied.

Jelliff filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L. § 440.10") as well as a habeas corpus petition pursuant to New York State's habeas corpus statute. Both were denied.

This federal habeas petition followed. For the reasons that follow, I recommend that Jelliff's request for a writ of habeas corpus be denied and the petition be dismissed.

## III.     Discussion

### A.     Standard Applicable to Habeas Review of State-Court Adjudications

A district court shall entertain an application for a writ of habeas corpus in behalf of a

person in custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §

2254(a). Errors of state law are thus not subject to federal habeas review.  *E.g., Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions."). Federal habeas review of state

court decisions is governed by the standard set forth in the Anti-Terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., which provides that "[a]n application

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

court shall not be granted with respect to any claim that was adjudicated on the merits in State

court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" established federal law if the

state court arrives at a conclusion on a question of law that is opposite to that reached by the

Supreme Court, or if the state court adjudicates essentially the same facts as a prior Supreme

Court case but reaches an opposite result. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)

(citations omitted). A state court decision is an "unreasonable application" of established federal

law if (1) the state court correctly identifies the relevant legal principle but unreasonably applies

it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply; or (3) the state court refuses to extend an existing principle to a context where it should be extended. *Id.* at 407. Any factual determination made by the state court must is presumed correct unless the habeas petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## B. General Legal Principles – Due Process Requirements in the Parole Revocation Context

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment applies to the revocation of parole. *E.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972); *see also Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 9 (1979). However, the Supreme Court has also recognized that defendants in parole revocation proceedings are not entitled to "the full panoply of rights" that are accorded in a criminal prosecution. *Morrissey*, 408 U.S. at 480 (citing *Mempa v. Rhay*, 389 U.S. 128 (1967)). Rather, given that the state has an "overwhelming" interest in being able to return parole violators to prison "without the burden of a new adversary criminal trial," the Due Process Clause, in this regard, requires merely that an "informal hearing" be held "to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 483-84. Thus, the Supreme Court has delineated the following "minimum requirements of due process" to include

> (a) written notice of the claimed violations of parole;
> (b) disclosure to the parolee of evidence against him;
> (c) opportunity to be heard in person and to present witnesses and documentary evidence;
> (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a "neutral and detached" hearing body; and
(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489; *accord, e.g.*, *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 652 (2d Cir.1993) (holding that the state may not revoke a person's parole without providing minimum due process protections which include "a preliminary probable cause hearing . . . , as well as a final revocation hearing, at which a parolee may present evidence and confront witnesses"). *Morrissey* represents the "clearly established Federal law" for purposes of federal habeas review. § 2254(d)(1). Further, the Second Circuit has determined that the procedures set forth in New York Executive Law § 259-I ("Exec. Law § 259-I") parole revocation that generally satisfy due process. See Calhoun, 999 F.2d at 652 (citing Exec. Law § 259-i(3)(f)).

## B.    Exhaustion

The federal habeas statute provides that "[a] petition for habeas corpus may not be brought in federal court unless the petitioner has first either exhausted the remedies available in state court or demonstrated the absence of an effective state remedy." *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000) (citing 28 U.S.C. § 2254(b)(1)). Exhaustion in general requires the habeas petitioner to have "'fairly presented' each federal claim to the highest state court." *Id.* (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Attorney General of N.Y.*, 696 F.2d 186, 191 (2d Cir.1982)). Stated another way, the claim that the petitioner raises in his federal habeas petition must be the "substantial equivalent," *Strogov v. Attorney General of N.Y.*, 191 F.3d 188, 191 (2d Cir.1999)

(quoting *Picard*, 404 U.S. at 278), of the claim presented to state court.

Respondent asserts that only one of Jelliff's habeas grounds have been properly exhausted and that the remaining three are unexhausted but procedurally barred from review by this Court. Respondent argues that, in any event, none of the claims warrant habeas relief. *See* Resp't Mem. at 4-20.

AEDPA's amendments to the federal habeas statute now permit a district court to *deny* a habeas petition containing unexhausted claims. *See* 28 U.S.C. § 2254(b). Because none of Jelliff's habeas claims have merit, regardless of the standard of review employed, I recommend, in the interest of judicial economy, proceeding to consider the merits of the claim without resolving the more difficult exhaustion and procedural default issues.

### C. Analysis of Petitioner's Claims

| | | |
|---|---|---|
| **1.** | **Ground One:** | **Denial of Defendant to attend preliminary probation hearing, this is a violation of due process rights.** |

As supporting facts for Ground One, Jelliff states as follows::

Probation officer had defendant arrested on violation of Probation warrant for driving without a license, which he stated in a letter that it was a lie. Defendant is entitled to a preliminary hearing as he was not convicted with [sic] a crime. Defendant appeared for hearing but was told he could not be present.

Petition at 7, ¶12(A). Respondent states that this issue was not raised at the probation violation hearing; there was no objection made to the trial judge. Resp't Mem. at 6. Jelliff raised the issue for the first time on collateral review in state court, in his C.P.L. § 440.10 motion and state habeas petition.

As respondent points out, what Jelliff is asserting in Ground One is not entirely clear. Respondent has construed Jelliff's contentions in several ways, and given the facts of this case,

there is no indication that Jelliff was denied any federal constitutional right to be present at any of his hearings. Based on Jelliff's allegations in the C.P.L. § 440.10 motion and state habeas petition, he appears to be claiming that his attorney told him that he could not attend the preliminary probation revocation hearing. However, petitioner did attend the November 8, 2002, preliminary hearing, at which he was advised of the charges against him, and defense counsel requested a "pre-hearing conference." This was scheduled for November 25, 2002, but not held on the record. Respondent surmises that a possible disposition of the matter was discussed on November 25, 2002, since about five weeks later, on January 2, 2003, petitioner declined a previously-discussed plea offer that included a one-year sentence in the local jail.

As respondent points out, the Supreme Court has held that a criminal defendant has a due process right to be present for trial proceedings "to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1933). Thus, a defendant must be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against he charges." *Id.* at 105-06. To show that his absence was in violation of the due process clause, the defendant must show not only that his presence would have "contribute[d] to the fairness of the procedure," but also that the procedure itself was "critical to [the] outcome [of the criminal proceeding]." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Jelliff has not come forward with any reasons as to why or how he was harmed by not being present at the November 25, 2002, pre-hearing conference, or how his presence would have contributed to the fairness of the conference. In short, Jelliff "does not claim that he would have added anything to the discussion or that he was otherwise prejudiced." *United States v. Doe*, 964 F.2d 157, 159 (2d Cir.1992). In *Doe*, the Second Circuit

declined to reverse conviction where appellant was absence from a chambers conference, which "was certainly a significant part of the proceedings against appellant" since "[i]t included a discussion of his cooperation with the government, his role in the offense, the proper period of supervised release, his future designation within the Bureau of Prisons, the issue of his voluntary surrender, and the question of his immediate prison placement." The Second Circuit found it significant that there "was no prejudice to appellant" because "[w]ith the exception of the details of his cooperation, the substance of every matter addressed in chambers was either repeated in open court immediately thereafter or contained in prior written submissions to the court." *Id.* (citing *United States v. Toliver*, 541 F.2d 958, 964-65 (2d Cir.1976)).

Jelliff has pointed to "no 'clearly established Federal law, as determined by the Supreme Court of the United States,' *see* 28 U .S.C. § 2254(d)(1), that guarantees a defendant the right of presence at a chambers conference between the trial judge and counsel at which legal issues are discussed." *Yonamine v. Artuz*, No. 00-2028, 2000 WL 1593300, at *1-2, 2000 U.S.App. LEXIS 26831, at *4 (2d Cir. Oct. 18, 2000) (unpublished) (citing *Snyder v. Massachusetts*, 291 U.S. 97, 106-07 (1933)); *accord Brown v. Conway*, No. 05CV0839, 2009 WL 604906, *4 (W.D.N.Y. Mar. 9, 2009) (Scott, M.J.); *Covington v. Lord*, 275 F. Supp.2d 352, 360 (E.D.N.Y. 2003). Accordingly, I recommend that Ground One be dismissed.

### 2. Ground Two: The "states [sic] failure to disclose that witness had lied violated defendants [sic] right to due process under *Brady*."

As supporting allegations for Ground Two, Jelliff states as follows:

Probation officer stated in violation papers that he saw defendant driving, he followed defendant, defendant presumably noticed Probation officer following him, he exited the vehicle and traded places with another person. Later in a letter to defendants [sic] work, probation officer stated that the charge was unfounded.

Respondent explains that the first count of the violation of probation, alleging that Jelliff was observed driving a motor vehicle without a license on October 15, 2002, was withdrawn. Resp't Mem. at 9. At the probation revocation hearing, the prosecutor did not present any evidence that petitioner was driving an automobile on that day. *Id.* The probation officer sent a letter to petitioner's union explaining that the allegation that Jelliff had been operating a motor vehicle while license was suspended in October 2002 was unfounded. *Id.* (citing Petitioner's Appellate Brief, Exhibit 30).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment. . . ." *Id.* at 87. Because Jelliff ultimately was not prosecuted based upon the unfounded allegation of driving on a suspended license, the Court fails to see how any information related to that was "material" to his conviction. Jelliff has failed to demonstrate any elements of a *Brady* claim, and I accordingly recommend that Ground Two be dismissed.

**3.    Ground Three: Constitutional Rights to a fair hearing denied.**

As supporting allegations for Ground Three, Jelliff states that "[t]he judge denied [sic] the defendant from developing a record on probation officer's motivation in filing a violation, he limited cross-examining right to confront witness and at the end of hearing to be heard. The Judge refused to fully engage in his fact-finding function as a Judge." Thus, Jelliff appears to be alleging a violation of his Due Process right to present a defense and a violation of his Sixth Amendment Confrontation Clause rights.

"The Confrontation Clause of the Sixth Amendment, which applies to the states through

the Fourteenth Amendment, *see Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923

(1965), guarantees the defendant in a criminal prosecution the right to confront the witnesses

against him." *Henry v. Speckard*, 22 F.3d 1209, 1219 (2d Cir.), *cert. denied*, 513 U.S. 1029

(1994). The Supreme Court has held, however, that "trial judges retain wide latitude, insofar as

the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination. . .

." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "All erroneous rulings that improperly

restrict cross-examination under state or federal rules of evidence do not necessarily implicate

the Confrontation Clause." *Harper v. Kelly*, 916 F.2d 54, 57 (2d Cir. 1990). The "Constitution

only '"guarantees an opportunity for effective cross-examination, not cross-examination that is

effective, in whatever way, and to whatever extent, the defense might wish."'" *Id.* (quoting *Van

Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*)).

Jelliff appears to be complaining about the trial court's limitation on defense counsel's

inquiry of the police officer, "Why did you wait eleven days to issue a warrant for Mr. Jelliff's

arrest?" 1/2/03 Tr. at 17. The prosecutor objected on relevancy grounds. The trial court asked

defense counsel, "Is this for the purpose of some sort of impeachment on lines of bias?" *Id.* This

question implied that the trial court would have permitted defense counsel to inquire into the

motivation of the witness, including possible self-interest and any bias or prejudice against the

defendant, which is one of the "principal subjects for cross-examination." *Henry*, 22 F.3d at

1219 (citing *Davis v. Alaska*, 415 U.S. at 316-17). However, defense counsel replied, "No, sir.

Simply to state that there was a point in time there was no plan to file a violation." *Id.* The trial

court sustained the prosecutor's objection on the basis of lack of relevance. Jelliff has not

demonstrated that this evidentiary ruling was incorrect as a matter of state or federal law or that

this amounted to an unreasonable restriction on his right of confrontation. Accordingly, I recommend that Ground Three be dismissed.

### 4. Ground Four: There were contradictory conditions running from the court's sentence of Probation to defendant, due process [sic].

In support of his fourth ground for relief, Jelliff contends that the "[p]robation officer didn't even know what Court orders for defendant existed. Defendant had been served with two different Court orders. Defendant had never been put on notice that both of the court orders were or were not running at the same time and that the second was not simply replacing the first one." As respondent points out, the conditions in the orders and conditions of probation were exceedingly clear in that they told petitioner, "Do not possess . . . alcoholic beverages," and "Do not enter establishments where alcohol is sold for on-premises consumption . . . ." These two conditions are not self-contradictory. At the probation hearing, the prosecutor presented uncontroverted evidence that petitioner (1) was in a restaurant that sold alcohol for on-premises consumption and (2) was seated at a table with a beer in front of him. 1/2/03 Tr. at 8-9; Ex. D. Respondent's Memorandum of Law ("Resp't Mem.") at 1 (quoting Respondent's Exhibit ("Resp't Ex.") B (6/29/01 Transcript ("Tr.") at 8; 1/02/03 Tr. at 32). This claim is factually and legally baseless and should be dismissed.

### 5. Ground Five: Lack of notice to defendant on what he had to defend himself on, due process of law.

As supporting allegations, Jelliff states, that the written violations of which he was accused were "of consuming (not possessing, only) alcohol, and the judge did not make such a finding; and (3) to [sic] admitting to being present in the grill and drinking in that bar on numerous occasions while on probation." Addendum to Petition at 1 (Docket No. 1). Therefore,

Jelliff argues, "[d]efendant was not accused in the violation of probation, [sic] of possession, just consumption, yet the judge reframed the issue in his decision to that being possession to justify a finding of a violation." *Id.* He concludes the written alleged violations failed to provide notices of the charges against which he was required to defend and the judge's finding was "legally erroneous." *Id.*

As noted above, in *Morrissey v. Brewer*, the Supreme Court outlined the minimum due process requirements for parole revocation hearings. 408 U.S. 471. In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court held that the due process standards set forth in *Morrissey* also applied in the probation revocation context. The written notice required under *Morrissey* "must be sufficient to allow the [petitioner] to prepare to defend against the charges." *United States v. Chatelain*, 360 F.3d 114 (2d Cir. 2004) (finding notice constitutionally sufficient where it identified the condition allegedly violated and described the basic underlying facts of the alleged violation).

Here, the written notice provided to Jelliff amply satisfied due process because it contained detailed information regarding the probation conditions he allegedly violated, namely:

> 6.  Do not possess . . . alcoholic beverages.
> 7.  Do not enter establishments where alcohol is sold for on-premises consumption . . . .

Respondent's Memorandum of Law ("Resp't Mem.") at 1 (quoting Respondent's Exhibit ("Resp't Ex.") B (6/29/01 Transcript ("Tr.") at 8; 1/02/03 Tr. at 32).

On October 15, 2002, the trial court signed a Declaration of Delinquency and a Violation of Probation Warrant including the following allegations:

> The probationer [Jelliff] was found to be in the R&M Grill in Corning on 10/2/02 and he admitted drinking in the same bar on numerous dates between 3/21/02 and

10/2/02. The petitioner was specifically instructed by PO Lake on 10/2/02 to remain out of establishments whose primary business was serving alcohol.

Resp't Mem. at 1. The notice also included in the Summary of Supervision further detail: "[Jelliff] denied his alcohol use until PO Lake followed him to a bar after an office visit and showed him an Alco-sensor screening device. Probationer initially denied the beer in front of him was indeed his." Resp't Mem. at 14.

Both the probation officer and petitioner stated that he (petitioner) was seated at a table at the R&M Grill, and that he had a glass of beer on the table. 1/2/03 Tr. at 6-10; 20-21. Jelliff admitted on cross-examination as follows:

> Q: And when you went to the bar on October 2, 2002, you ordered a beer, is that right?
> A: Right.
> Q: It was brought to the table where you were sitting?
> A: Yes.
> Q: It was poured for you. That was your beer, is that correct?
> A: Correct.

1/2/03 Tr. at 29-30. Jelliff explained, "I went in there, was going to order something to eat and I ordered a beer. The beer was sitting there." *Id.* at 31.

Following the hearing, the trial court determined that Jelliff had violated the terms and condition of the probation order he had signed:

> The court finds by a preponderance of the evidence the defendant has violated the terms and conditions of his probation which required him *not only to not possess alcoholic beverages but also required him to refrain from entering establishments where alcohol is sold for on premises consumption and I find that the R&M Grill was or R&M Restaurant was such an establishment.*
>
> I agree with the prosecutor that the conflicting evidence concerning whether or not the defendant consumed alcoholic beverages may be resolved through evaluation of credibility. I'm just not going to get to that at this point. I feel there is sufficient testimony, too, based on the uncontradicted evidence that would

-14-

justify and does justify a finding that the defendant has violated the terms and conditions of his probation.

1/2/03 Tr. at 40-41 (emphasis supplied).

It is clear from written notice of probation violations that Jelliff had sufficient notice that he was accused of possessing *or* consuming alcoholic beverages and being at an establishment where alcohol was being sold for on-premise consumption. The uncontroverted testimony, including petitioner's own admissions, more than adequately established that Jelliff "possessed" alcoholic beverages: he admitted to ordering a beer, the beer was brought to him, and placed in front of him on the table. It was not necessary for the prosecution to establish that he actually consumed the beer, because simply "possessing" alcohol also constituted a violation of the probation conditions by which Jelliff had sworn to abide. Furthermore, there was no doubt that the R&M Grill served alcohol for its patrons to consume on-site, so it was a place that Jelliff was forbidden from entering. Again, both his and the prosecution witness' testimony established beyond a doubt that he was present at the R&M Grill.

Because Jelliff received, during the entire probation-revocation proceeding, all the due process to which he was constitutionally entitled under *Morrissey*, the Court recommends dismissing Ground Five.

6. **Ground Six: "Denied equal protection, unequal treatment by a governmental agency brought maliciously following defendants [sic] complaint about probation officer's actions"**

Jelliff contends that his probation officer unlawfully entered his home on October 2, 2002, at 3:00 p.m. while nobody was home; Jelliff says "[a]t 4:00 pm when i [sic] got home [sic] my daughters who were getting off the school bus at that time saw him come out of the house." Addendum to Petition at 1 (Docket No. 1). The Court is unsure exactly what occurred there. In

any event, Jelliff states that he called the probation officer's supervisor to complain and was allegedly told, "if you know whats [sic] good for you just let it go." *Id.* Jelliff also points to the fact that the alleged probation violation based on driving a motor vehicle without a license was later dismissed as further evidence of retaliation to "'get'" him for complaining about the "unconstitutional search of [his] house." *Id.*

"In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). In order to establish a violation of equal protection based upon selective enforcement, a petitioner must show (1) that he was "selectively treated" as compared to others who are "similarly situated" and (2) that such selective treatment was based upon "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad fait intent to injury a person." *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (quotation marks omitted)).

To the extent that Jelliff appears to be asserting a claim for malicious prosecution, the Court notes that such claims "brought under [42 U.S.C.] § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for ... malicious prosecution under [New York] state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir.2003). "A malicious prosecution claim under New York law requires the plaintiff to prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* at 136 (quoting

*Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997) (internal quotation marks omitted in original)).

Jelliff offers nothing but bare, self-serving assertions in support of his claim that he was selectively prosecuted, and that his probation revocation proceedings were commenced because of a "malicious or bad faith intent to injure [him]," *LaTrieste*, 40 F.3d at 590. Notably, the criminal proceeding against him did not terminate "in his favor," *Jocks*, 316 F.3d at 136, which is one of the *prima facie* elements of a malicious prosecution claim. Accordingly, the Court recommends that Ground Six be denied.

### 7.    **Ground Seven: "Cruel and Unusual Punishment"**

Jelliff states that prior to the probation revocation hearing, he was offered a plea with a sentence of 1 to 3 years if he would admit to all of the alleged probation violations. He rejected this offer. After he was convicted, he received a sentence of incarceration of one and one-third to four years. Jelliff admits that this sentence is "maybe legal, [but] is nevertheless harsh and severe." Addendum to Petition at 1-2 (Docket No. 1).

*White v. Keane*, 965 F.2d 1381, 1383 (2d Cir.1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.") (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y.1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.1989)). A petitioner's assertion that a sentencing judge abused his or her discretion in sentencing is not a cognizable federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir.1977) (stating that no cognizable federal claim is raised by means of a claim that the sentencing judge abused his sentencing discretion) (citing *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) [("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction,

much less on review of the state court's denial of habeas corpus.")]. We thus are unable to grant relief on this ground as well.")). As Jelliff concedes, the sentence imposed by the trial court was within the statutory range permitted under New York State Law. Therefore, I recommend that Ground Seven be dismissed.

### 8.    Ground Eight: "Ineffective Counsel"

Jelliff contends that the public defender who represented him failed to protect his rights, stating that "[d]efendant should be given formal notice of charges, along [sic] opportunity to be heard and to confront witnesses, and defendant was denied these rights, yet defendant's Counsel raised nothing on these grounds." Addendum to Petition at 2 (Docket No.1). Jelliff also complains that "[c]ounsel failed to make obvious and meritorious objections[,]" *id.*, but Jelliff does not identify which objections should have been made.

The standard to be used in determining the effectiveness of counsel is well-established. *See Strickland v. Washington*, 466 U.S. 668 (1984). "The benchmark for judgment of any claim of ineffectiveness must be whether counsel's conduct so undermined the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* Judicial scrutiny of counsel's performance must be highly deferential, and reviewing courts should indulge a strong presumption that counsel comported himself properly. *Id.* Finally, the deficiencies alleged by the defendant must have resulted in prejudice; that is, the defendant must show that "but for" counsel's ineffectiveness there would have been a reasonable probability of a more favorable outcome. "In light of this demanding standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight." *Hartley v. Senkowski,* No. CV-90-0395,1992 WL 58766, at *2 (E.D.N.Y. Mar.18, 1992); *see also St. Jean*

-18-

*v. United States*, No. 06-CR-414, 2008 WL 4415170, at *2 (N.D.N.Y. Sept. 23, 2008) ("Broad, generalized claims of an attorney's failure to pursue a defense are insufficient to sustain a claim of ineffective assistance of counsel under the first prong of the *Strickland* test.") (collecting cases)). Jelliff's bare assertions that trial counsel should have done "something" differently fail to overcome the presumption that counsel acted in a professionally reasonable manner. Therefore, Jelliff cannot meet the "deficient performance" prong of *Strickland*. Because the *Strickland* standard is phrased in the conjunctive, his claim necessarily should fail. *See Strickland*, 486 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). Furthermore, Jelliff's assertions that he was denied proper notice, an opportunity to be heard, and the opportunity to confront witnesses are flatly belied by the record in this case. Accordingly, the Court recommends that Ground Eight be dismissed.

## IV.     Conclusion

For all of the foregoing reasons, the Court recommends that Jelliff's petition be dismissed in its entirety. Because Jelliff has not made a substantial showing of a denial of a federal constitutional right, the Court recommends that no certificate of appealability should issue. *See* 28 U.S.C. § 2253(c).

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  May 11, 2009
        Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

-20-

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: May 11, 2009.
      Rochester, New York